**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| Martin L. Manning, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil No. 14-cv-01995 (APM) |
| | ) |
| Eric Fanning,[1] | ) |
| | ) |
| Defendant. | ) |

_____ )

## MEMORANDUM OPINION

## I.    INTRODUCTION

In late 1997, Plaintiff Martin L. Manning became eligible to participate in a survivor

benefit plan, based on his years of service in the Armed Forces.  At that time, Plaintiff selected his

paraplegic daughter as the beneficiary of the plan, listing her as a "dependent child" on the relevant

form.  Fifteen years later, in 2012, Plaintiff applied to the Army Board for Corrections of Military

Records ("ABCMR" or "the Board"), requesting that it change his beneficiary selection, based, in

part, on the fact that his daughter had not met the criteria for a "dependent child" at the time

Plaintiff filled out the form.  After several rounds of review by the ABCMR—all of which resulted

in denial of Plaintiff's application for modification—Plaintiff now brings suit in this court.  Among

other requests, he asks the court to void his beneficiary selection, as well as order various changes

to ABCMR forms and regulations.  In response, Defendant Eric Fanning, Secretary of the Army,

has filed a Motion to Dismiss and for Summary Judgment.  After consideration of the parties'

pleadings and the administrative record, the court grants Defendant's motion in its entirety.

---

[1] Eric Fanning, Secretary of the Army, substituted as Defendant for John McHugh, former Secretary of the Army, pursuant to Federal Rule of Civil Procedure 25(d).

## I.      BACKGROUND

### A.      Factual Background

At various times since 1969, Plaintiff Martin L. Manning has served his country honorably in the U.S. Army, the Arizona National Guard, and the U.S. Army Retired Reserve.  Administrative Record, ECF No. 18 [hereinafter A.R.], at 208-09, 370-72, 382, 410.  Based on this service, in September 1997, Plaintiff received a letter notifying him that he was "eligible for retired pay upon application at age 60."  *Id.* at 325.  As part of his retired pay benefit, Plaintiff also became eligible to participate in a "Survivor Benefit Plan."  *See id.*  Accordingly, on October 31, 1997, Plaintiff completed a "Survivor Benefit Plan Election Certificate" ("Form 1883"), on which he listed his paraplegic daughter as his sole beneficiary, writing her name in the box for "unmarried dependent children."  *Id.* at 63, 321; *see also* Am. Compl., ECF No. 13, ¶ 5.  Plaintiff further chose "immediate coverage" under the plan, selecting the option that would "provide an immediate annuity beginning on the day after [the] date of [his] death, whether before or after age 60."  A.R. at 321.  Form 1883 expressly advised Plaintiff that his decision was "a permanent irrevocable decision" and warned him to "consider [his] decision and its effect very carefully."  *Id.*  Plaintiff, however, asserts that his unit's Personnel Staff Noncommissioned Officer, SFC Stephen F. Schrader, told him that "if he did not name [his] daughter as [his] beneficiary no one would ever be able to collect any benefits . . . and that [he] would be able to make another election when [he] turned 60."  Am. Compl. ¶¶ 5, 7-8; A.R. at 63, 4.

In 2004, Plaintiff was honorably discharged from the Arizona National Guard, and, later that year, married his current wife.  A.R. at 209.  Seven years later, in 2011, during the application process for retired pay, Plaintiff filled out a form selecting his wife as the sole beneficiary of the

Survivor Benefit Plan. *Id.* at 275. In July 2012, however, Plaintiff learned that he was not entitled to change his previous selection of his daughter as his beneficiary. *Id.* at 5.

### B.      Procedural History

A month later, Plaintiff sought relief from the Army Board for Corrections of Military Records ("ABCMR" or "the Board"), requesting that his original Form 1883 be modified to state that he "decline[s] to make an election at this time." *Id.* at 213. After his application was denied on March 27, 2013, *id.* at 206-212, Plaintiff submitted a request for reconsideration, *id.* at 138-141. The Board re-reviewed Plaintiff's application, but once again, on May 28, 2014, the Board denied Plaintiff's request to void his beneficiary election. *Id.* at 128-137.

On November 20, 2014, Plaintiff filed suit before this court, challenging the ABCMR's decision. *See generally* Compl., ECF No. 1. Several months later, on February 2, 2015, pursuant to a request by Defendant, the case was remanded to the ABCMR, so that the Board could better explain how it had distinguished Plaintiff's case from a previous, similar, ABCMR case. *See* Order of Feb. 4, 2015, ECF No. 7. Plaintiff also was permitted to submit additional arguments and materials to the Board. *See* Def.'s Mot. to Dismiss and for Summ. J., ECF No. 14 [hereinafter Def.'s Mot.], Def.'s Statement of Facts, ECF No. 14-1, ¶ 19 (citing A.R. 22-124). Nonetheless, on September 17, 2015, the ABCMR again denied Plaintiff his requested relief. A.R. at 3-21. A month later, Plaintiff filed his Amended Complaint, challenging the ABCMR's decision, as well as a related procedural regulation concerning requests for reconsideration. *See generally* Am. Compl. In response, Defendant filed a Motion to Dismiss and for Summary Judgment. *See generally* Def.'s Mot.

### III.    STANDARD OF REVIEW

In its Motion, Defendant contends that: (1) Plaintiff lacks standing to bring his claims regarding the ABCMR's procedural regulation and, therefore, those claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1); and (2) Defendant is entitled to summary judgment on Plaintiff's claims regarding the ABCMR's decision not to modify his records, because the ABCMR did not act arbitrarily and capriciously or otherwise contrary to law.  *See generally id.*

### A.    Motion to Dismiss

On a motion to dismiss for lack of standing brought under Rule 12(b)(1), a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation and internal quotation marks omitted).  The burden of establishing the elements of standing "rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A plaintiff must establish standing "for each claim" and "for each form of relief sought," *DaimlerChrysler*, 547 U.S. at 352 (citation and internal quotation marks omitted), "with the manner and degree of evidence required at the successive stages of litigation," *Lujan*, 504 U.S. at 561.

When assessing a motion to dismiss predicated on lack of standing, the court must accept "well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  The court is not required to assume the truth of legal conclusions or accept inferences that are not supported by the facts set out in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007).  "Threadbare recitals of the elements of

[standing], supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  If a complaint lacks sufficient facts "to state a claim [of standing] that is plausible on its face," the court must dismiss it.  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Arpaio*, 797 F.3d at 19.  When a court is assessing a Rule 12(b)(1) motion, it has broad discretion to consider materials outside the pleadings if they are competent and relevant.  *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, Federal Practice & Procedure § 1350 (3d ed. 2004))**.**

Although *pro se* complaints are held to a less strict standard than lawyer-drafted complaints, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (citation and internal quotation marks omitted), a court need not make or accept inferences that are unsupported by allegations of fact, *see Henthorn v. Dept. of Navy,* 29 F.3d 682, 684 (D.C.Cir.1994).  Ultimately, however, a *pro se* plaintiff "must present a claim upon which relief can be granted." *Id.* (citation and internal quotation marks omitted).

## B.    Review of the ABCMR's Decision

It is well established that federal courts have the competency to review the decision of a military board of correction using "familiar principles of administrative law."  *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511.[2]  Such review is limited, however.  As stated in *Kreis*: "Adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Id.*  The court performs "nothing more than the normal review of agency action" and "require[s] only that the

---

[2] *See also, e.g., Coburn v. McHugh,* 679 F.3d 924, 929 (D.C. Cir. 2012) (reviewing a military board decision under the standards of the APA and administrative case law); *Piersall v. Winter*, 435 F.3d 319, 322 (D.C. Cir. 2006) (same); *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (same); *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011) (same); *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 182-83 (D.D.C. 2011) (same); *Rudo v. Geren*, 818 F. Supp. 2d 17, 25 (D.D.C. 2011) (same); *Poole v. Harvey*, 571 F. Supp. 2d 120, 124 (D.D.C. 2008) (same).

agency exercise its discretion in a reasoned manner, but . . . defer[s] to the agency's ultimate substantive decision." *Id.* at 1512. "The focal point for [such] judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (D.D.C. 2010).

Summary judgment is the "mechanism" by which the court may review the agency action to ensure that it "is supported by the administrative record and is otherwise consistent with the APA standard of review." *Se. Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010). Under the APA, a court must set aside an agency action, finding, or conclusion if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012). Judicial review under the "arbitrary and capricious" standard is "highly deferential" and "presumes the agency's action to be valid."[3] *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981).

## IV.    DISCUSSION

The court first considers Plaintiff's arguments regarding the Board's denial of his application for correction. It then turns to his challenge of the Army regulation concerning requests for reconsideration.

---

[3] The D.C. Circuit has in some cases applied an "unusually deferential" standard of review to military board decisions. *See, e.g., Kreis*, 866 F.2d at 1514; *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). *See also Albino v. United States*, 78 F. Supp. 3d 148, 164 (D.D.C. 2015); *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009). The heightened level of deference is intended to prevent overuse of the courts by soldiers dissatisfied with their ratings. *Cone*, 223 F.3d at 792. However, the D.C. Circuit has also suggested that the circumstances in which the "unusually deferential" standard should be applied may be limited. *See Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (stating that traditional APA deference is warranted when a court reviews a decision of the ABCMR involving "a procedural regulation governing its case adjudication process," rather than "military judgment requiring military expertise"). *See also Wilhelmus*, 796 F. Supp. 2d at 161-62 (reaffirming the distinction established in *Kreis*, 406 F.3d at 686, and finding that the "traditional APA standard should be applied" where plaintiff made "non-frivolous claims of plain legal error" that raised "issues of procedural fairness"). Here, it is irrelevant whether the court uses the "unusually deferential" standard of review or the traditional standard of deference under the APA. Ultimately, the result would be the same.

A.    **The ABCMR's Decision**

Defendant contends that summary judgment should be entered in its favor because the Board's decision not to amend Plaintiff's Form 1883 "was supported by substantial evidence" and "was not arbitrary and capricious or otherwise contrary to law or regulation."  Def.'s Mot. at 1. Plaintiff, on the other hand, as best the court can tell, offers three reasons why the ABCMR's decision was, in fact, unsupported, arbitrary, and capricious.  *See generally* Pl.'s Opp'n to Def.'s Mot. to Dismiss, Statement of Facts, ECF No. 16 [hereinafter Pl.'s Opp'n].  Specifically, Plaintiff argues that Defendant: (1) inappropriately applied the definition of "dependent child" under 10 U.S.C. § 1447, *id.* at 10-13; (2) neglected to refer to Arizona law in reaching its decision, *id.* at 11; and (3) failed to follow precedent or provide a reasoned explanation for its decision, *see generally id.*  The court addresses each of these arguments in turn.

1.    *The ABCMR's Definition of "Dependent Child"*

According to Plaintiff, "[t]he ABCMR continually tries to interpret 10 U.S.C. § 1447 [the relevant federal statute] as granting dependency to the Plaintiff[']s daughter, when it is clear at the time of [Plaintiff's] beneficiary election on . . . [F]orm 1883 . . . , she was not a dependent." *Id.* at 12.  Because his daughter did not actually meet the criteria for a "dependent child" under the relevant law, Plaintiff argues, his selection of her as his beneficiary should be void.  *See id.* at 10-12.

Section 1447 sets forth the definition of a "dependent child" under the Survivor Benefit Plan at issue in this case.  It states that a "dependent child" is a person who:

(i)    is unmarried;

(ii)    is (I) under 18 years of age, (II) at least 18, but under 22, years of age and pursuing a full-time course of study or training . . . , or (III) incapable of self support because of a mental of physical incapacity existing before the person's eighteenth birthday or incurred on or after that birthday, but before the person's twenty-second

birthday, while pursuing a full-time course of study or training; and

(iii)    is the child of a person to whom the Plan applies, including (I) an adopted child, and (II) a stepchild, foster child, or recognized natural child who lived with that person in a regular parent-child relationship.

10 U.S.C. § 1447(11) (2012).  Focusing on the third of these three criteria, Plaintiff appears to argue that the Board committed a legal error when it decided the clause "who lived with that person in a regular parent-child relationship" applies *only* to those categories of children that are listed after the word "including," rather than to *all* categories of eligible dependent children (*i.e.*, even categories not listed).  A.R. at 25; *see also* Pl.'s Opp'n at 10-12; *see also* Am. Compl. ¶ 11.  Plaintiff further contends that if the Board had applied Plaintiff's broader reading of the statute— requiring all children to have "lived with [the applicant] in a regular parent-child relationship"— it would not have found that his daughter was an eligible beneficiary at the time he designated her, because she was not then living with him.  A.R. at 25; *see also* Pl.'s Opp'n at 10-12; *see also* Am. Compl. ¶ 11.

Plaintiff's understanding of the statute, however, is inconsistent with its plain text.  The statute's key words are not those that come after the word "including," but those that come before.  At its core, the third criteria for identifying a "dependent child" simply requires that the beneficiary be "the child of a person to whom the Plan applies."  10 U.S.C. § 1447(11)(iii).  And, as the Board found, Plaintiff's daughter plainly met that requirement.  A.R. at 19 (finding the third criteria was satisfied "[b]ecause Plaintiff's daughter is his biological offspring born during marriage").

The phrase on which Plaintiff focuses—"who lived with that person in a regular parent-child relationship"—does not change that conclusion, because it does not modify "the child of a person to whom the Plan applies."  Instead, it follows the word "including."  As the Supreme Court has observed, "the term 'including' is not one of all-embracing definition, but connotes simply an

illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (citation omitted).

So it is here.  In identifying "a stepchild, foster child, or recognized natural child who lived with that person in a regular parent-child relationship," the statute is simply illustrating examples of the types of parent-child relationships which might qualify a child as an eligible "child of a person to whom the Plan applies."  It highlights that both natural and non-natural born children can be designated as a beneficiary.  It does not, however, require all eligible children to have "lived with [the member receiving benefits] in a regular parent-child relationship."  The Board's refusal to apply the "regular parent-child relationship" requirement to Plaintiff's case, A.R. at 19; Pl.'s Opp'n at 13-14, was therefore appropriate.[4]

### 2.    *Refusal to Apply Arizona Law*

Plaintiff also contends that the ABCMR made a second legal error by refusing to consider Arizona state law when determining whether his daughter was an eligible beneficiary at the time he made his election.  *See* Pl.'s Opp'n at 11.  "Because the federal courts recognize that the states establish custody and dependency in the matters of divorce," Plaintiff argues, "the ABCMR is obligated to consider the actual custody of the Plaintiff[']s daughter [i]n that Arizona law considers a minor child to be an adult upon reaching the age of 18 years."  Pl.'s Opp'n at 11.

Plaintiff is correct that "domestic relations" traditionally have been considered the realm of state courts and state law.  *See, e.g., Boggs v. Boggs*, 520 U.S. 833, 848 (1997) ("As a general matter, '[t]he whole subject of the domestic relations of husband and wife, parent and child,

---

[4] Moreover, even if the language of Section 1447 could be construed to require Plaintiff's daughter to have "lived with [Plaintiff] in a regular parent-child relationship," Plaintiff's daughter met that criteria at the time of Plaintiff's beneficiary election.  Although Plaintiff's daughter was abducted by her mother in 1983, Plaintiff previously had been granted full custody of his daughter in 1979.  A.R. at 23.  Presumably then, Plaintiff's daughter did live with him in a regular parent-child relationship until the time of her abduction.  Plaintiff offers no evidence to the contrary.

belongs to the laws of the States and not to the laws of the United States.'" (citation omitted)). This case, however, is not a case about domestic relations.  It is a case about the correction of a federal record, which affects the application of a federal program, which was created by federal statute.  The controlling law, therefore, is federal law.

Here, the governing federal statutory scheme which established the Survivor Benefit Plan specifically defines the term "dependent child."  10 U.S.C. § 1447(11).  And that definition does not itself make any reference to any state law.  There is no way, then, that state law is relevant to the Board's determination of whether Plaintiff's daughter was an eligible dependent child beneficiary.  *See, e.g.*, *First Nat. Bank in Plant City, Fla. v. Dickinson*, 396 U.S. 122, 133-34 (1969) (noting that it would be "an improbable result" to allow States to define the content of the banking term "branch" where Congress included a general definition of the term "branch").  The Board concluded as much in its opinion, stating that "[Plaintiff] has cited no authority, nor can this Board find any, indicating that state law should be considered as controlling authority, or even persuasive authority, when determining whether a child beneficiary meets dependency requirements."  A.R. at 17-18.  The ABCMR's decision not to apply Arizona state law was proper.

3.    *The Arbitrary and Capriciousness of the ABCMR's Decision and its Inconsistency with Prior Decisions*

In addition to his contentions regarding the Board's improper application of the "regular child-parent relationship" provision and its failure to use Arizona state law, Defendant argues more broadly that the ABCMR's decision not to alter or void his Form 1883 was arbitrary and capricious.  Part of the Board's error, Plaintiff contends, stems from Defendant's failure to follow its own relevant past decisions as well as a relevant decision of the Comptroller General. Defendant, however, asserts that "the [Board] supplied the requisite satisfactory explanation and rational connection between the facts and [it] decision."  Def.'s Mot. at 12.  The court addresses

each aspect of Plaintiff's argument below.

>       a.      The ABCMR has provided a rational explanation for its decision

A plaintiff challenging the decision of a board of correction, as here, must overcome a "strong but rebuttable presumption that administrators of the military . . . discharge their duties, correctly, lawfully, and in good faith." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997).  The decision itself need not be a "model of analytic precision." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995).  *See also, e.g., Frizelle,* 111 F.3d at 176; *Albino v. United States*, 78 F. Supp. 3d at 163-65 (D.D.C.  Jan. 15, 2015).  As long as the Board has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" the court will not overturn its decision. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  *See also, e.g., Frizelle,* 111 F.3d at 176; *Rudo v. Geren*, 818 F. Supp. 2d 17, 24 (D.D.C. 2011).

A board of correction's decision will not pass muster, however, if it does not adequately address a petitioner's non-frivolous argument. *See Saint-Fleur v. McHugh*, 83 F. Supp. 3d 149, 155 (D.D.C. 2015) (collecting cases).  It is not enough for the board merely to acknowledge that an argument exists, *Rudo*, 818 F. Supp. 2d at 26-27, or to "identify a plaintiff's non-frivolous arguments without responding to them, either by addressing the arguments' merits or explaining why they need not be addressed," *Albino*, 78 F. Supp. 3d at 167.  Instead, the board of correction's decision must provide an explanation that enables a reviewing court to evaluate the rationale behind its decision. *Dickson,* 68 F.3d at 1404.  The board of correction must provide, in short, "a reason that a court can measure." *Kreis*, 866 F.2d at 1514.  It cannot, however, retroactively justify its decision during court proceedings. *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't*

*of Health & Human Servs.*, 396 F.3d 1265, 1276 (D.C. Cir. 2005).

Here, the Board has sufficiently explained how it reached the conclusion that it would not void or alter Plaintiff's selection of his daughter as his beneficiary on Form 1883.   In its opinion of September 17, 2015, it noted that the

> evidence clearly shows the applicant was single and indicated that he had a dependent child when he completed his . . . Form 1883. . . . His daughter . . . appeared to be an eligible beneficiary, and it is reasonable to assume applicant considered her to be an eligible beneficiary at the time he chose her as the . . . sole beneficiary.

A.R. at 18.  The Board continued, "[b]y completing the . . . Form 1883 and authenticating it with his signature, [Plaintiff] affirmatively made his daughter an eligible beneficiary and acknowledged he understood the decision he made." *Id.*  Finding that there was insufficient evidence to support Plaintiff's allegation that his daughter had been ineligible for benefits at that time and that his Form 1883 therefore should be voided, the Board concluded that "[Plaintiff's] claim that [his daughter] was, or is, an ineligible dependent is unsubstantiated." *Id.*

The Board further determined that there was no injustice or inequitable treatment affecting Plaintiff that would warrant a change to the record.  Because both the government and Plaintiff incurred obligations and benefits as a result of his beneficiary election, the Board wrote that "[Plaintiff] cannot claim an injustice in this case nor can he claim he was treated inequitably." *Id.* at 19.  In sum, the ABCMR explained:

> There is no evidence suggesting the applicant's [Form 1883] processing was improper or inequitable, or that the previous decisions of the ABCMR pertaining to [Plaintiff's] specific case were arbitrary or capricious.  These decisions were clearly supported by the available evidence of record and by the absence of compelling independent evidence provided by the applicant.  There is no evidence of an error or injustice.

*Id.*

The court finds the Board's explanation for its denial of Plaintiff's application for correction to be both rational and sufficient. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43. As established by federal regulation, the Board "is not an investigative body," 32 C.F.R. § 581.3(c)(2)(iii) (2005), and it must presume that the records it reviews are valid, *id.* § 581.3(e)(2). Therefore, the burden is on Plaintiff to overcome the "presumption of regularity" of the records and provide sufficient evidence to permit the Board to decide that, "on the evidence of the record," "an error or injustice has occurred" which must be remedied. *Id.* § 581.3(e)(2), (c)(2)(iii); *see also id.* § 581.3(e)(2)(iii) (noting that the applicant must prove such error or injustice "by a preponderance of the evidence").

Applied here, these regulations mean that the Board was required to presume that Plaintiff's Form 1883 was correct. Thus, Plaintiff—not the Board—needed to demonstrate that his Form 1883 actually was incorrect or that some other injustice had occurred that would warrant a change to the form. Yet Plaintiff provided the ABCMR with minimal evidence that would support such a change. In defense of his claim, Plaintiff argued that the evidence demonstrated that his daughter was not an eligible beneficiary at the time he named her because she did not meet the second eligibility criteria under Section 1447—specifically, she was not between the ages of 18 and 22 and incapable of self-support. *See, e.g.*, Pl.'s Opp'n at 3-7, 12-14; A.R. at 217. But the only evidence Plaintiff provided to support his assertion that his daughter was actually capable of self-support was a copy of a deed showing that she had purchased a house for $10. A.R. at 12. As aptly stated by Defendant, however, "the fact that Plaintiff's 'daughter was deeded real property for ten dollars does not in and of itself establish that she was or is capable [of] self support.'" Def.'s Mot. at 15 (citing A.R. at 18). Without additional support from Plaintiff—such as a sworn affidavit from Plaintiff's daughter—the Board reasonably found that the presumption of regularity

outweighed the minimal evidence offered to show that Form 1883 contained an error or evidenced injustice.  *See* A.R. at 19.

Similarly, the Board adequately and rationally addressed Plaintiff's assertion that he was misguided or coerced by another service member into selecting his daughter as his beneficiary. *See id.* at 4, 22-24.  Faced with a Board directed to presume the regularity of the record before it, Plaintiff provided no corroborating evidence in support of his claim.  Once again, the Board reasonably concluded that without such "corroborating evidence in support of this allegation," *id.* at 18, the Board could not find that Plaintiff's Form 1883 selection had been made in error or constituted an injustice.  Put simply, the ABCMR's assertion throughout its opinion that Plaintiff simply had not provided sufficient evidence to permit it to rule in his favor—and that there was actually significant evidence countering Plaintiff's position—is neither arbitrary nor capricious and provides no grounds for remand.

### b.    The ABCMR reasonably distinguished related precedent

Plaintiff also asserts that the ABCMR's decision was arbitrary and capricious specifically because it failed to adequately distinguish three decisions—one opinion of the Comptroller General and two opinions of the Board itself—involving similar circumstances.  *See* Pl.'s Opp'n at 16-19.  The court acknowledges that none of these decisions are strictly binding on the ABCMR. *See Bowsher v. Synar*, 478 U.S. 714, 727-32 (1986) (finding that the Comptroller General is independent of the Executive Branch); *see also Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 352 (D.C. Cir. 2005) (requiring a "reasoned explanation" from the Air Force Board for the Correction of Military Records where it denied reconsideration in a case that was similar to another case in which reconsideration was granted).

14

But even though the Board is not required to "grapple with every last one of its precedents, no matter how distinguishable," *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (citation omitted), "[n]ormally, an agency must adhere to its precedents in adjudicating cases before it," *id.* (citation omitted).   If it does not follow its own precedent, the Board "must provide an adequate explanation to justify treating similarly situated parties differently." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005)) (internal quotation marks omitted).   And, separately, the Board is required to respond to non-frivolous arguments made by an applicant.   *See Frizelle*, 111 F.3d at 177 (holding that the Coast Guard Board of Correction of Military Records decision was arbitrary where it failed to respond to two arguments that were facially non-frivolous and could have affected the matter's ultimate disposition).   Thus, the court analyzes the three decisions referenced by Plaintiff to determine if the Board addressed them appropriately in its ruling.

First, the court turns to *Matter of: Sergeant Theopria James (Retired) (Deceased)*, B-252930, 1993 WL 566319 (Comp. Gen. Sept. 24, 1993), which is the Comptroller General case referenced by Plaintiff in his Amended Complaint and Opposition.[5]   *See* Am. Compl. ¶ 20; Pl.'s Opp'n at 16-17.   This case was not addressed by the Board in any of its opinions regarding Plaintiff's application for correction.   In its Motion to Dismiss, however, Defendant appears to contend that it was not required to discuss *Theopria James* because it "is not relevant to Plaintiff's complaint."   Def.'s Mot. at 18.   Defendant notes that "the decisions of the Comptroller General are not binding upon the executive branch," *id.* (citing *Bowsher*, 478 U.S. at 727-32), implying

---

[5] As Defendant aptly noted, Plaintiff cites this case as "57 Comp. Gen. 426," but based on the quotations and evidence submitted to the Board, it is clear that he is referring to *Matter of: Sergeant Theopria James*.   *See* Def.'s Reply, ECF No. 17, at 3 n.1.

that consideration of the Comptroller General case would not compel any change to the Board's decision. The court agrees with this assessment and finds that, because the case does not constitute binding precedent and is not substantively relevant, as discussed below, the application of *Theopria James* to this case is frivolous. It therefore did not warrant discussion by the Board.

In *Theopria James*, it came to light after a soldier died that he had not divorced his first wife before marrying his second wife. 1993 WL 566319 at *1. The Comptroller General therefore held that his current wife could not be considered an eligible widow beneficiary and revoked the annuity payments made to her under the Survivor Benefit Plan. *Id.* at *1-2. Plaintiff argues that this decision proves that the selection of an ineligible beneficiary voids the election. Am. Compl ¶ 13 ("I quote 'We have held that where a member is required make an affirmative election to participate in the [Survivor Benefit Plan] and indicated an ineligible beneficiary, the election to participate is defective and must be considered invalid.'") (emphasis omitted). As Defendant argues, however, *Theopria James* is readily distinguishable from the case before the court. Whereas, in that case, a void marriage was *proven*, here, Plaintiff "failed to demonstrate that his daughter was in fact an ineligible beneficiary." Def.'s Mot. at 18. The court finds that Defendant has rationally distinguished *Theopria James* from this case and thus it would be futile for the court to remand the case so that the parties could address it—particularly because the Board is not required to address frivolous arguments.

Next, the court addresses ABCMR case 20050002726. Plaintiff claims that ABCMR case 20050002726 contradicts the ABCMR's statement in his case that "[t]here is no requirement [for an applicant] to supply evidence of disability or fulltime school enrollment at the time [a] child only [Survivor Benefit Plan] is elected." Am. Compl. ¶ 17 (emphasis omitted); A.R. at 18. In ABCMR case 20050002726, a U.S. Army Reserve officer applied to have his Form 1883 election

16

corrected, based on the fact that his son had been ineligible for benefits at the time the officer made his beneficiary selection.   A.R. at 107-11.   Because the U.S. Army had failed to require the applicant to "provide proof that the child listed on his . . . Form 1883 was eligible for the [Survivor Benefit Plan]" at the time he made the election, the Board found that the Form 1883 at issue should be corrected.   *Id.* at 110.   The underlying implication is that if such a requirement does exist—if an applicant must provide proof of his beneficiary's eligibility at the time he chooses that beneficiary—then that requirement was not met in Plaintiff's case.   Therefore, the invalidation of Plaintiff's beneficiary selection would be warranted.

Although the Board arguably did not adequately address this cited case in its initial decision or decision after reconsideration, Defendant asked the court for a remand to allow the ABCMR to provide more substantial explanation as to why ABCMR case 20050002726 did not apply. *See* Def.'s Unopposed Mot. to Remand to Army, ECF No. 6.   The court agreed to remand the case to the Board.   Order of Feb. 4, 2015, ECF No. 7.   As a result, the Board, in its most recent decision, remedied its earlier lack of attention to ABCMR case 20050002726 and sufficiently explained the reasons that it did not affect the Board's conclusion in this case.

While acknowledging that "equity requires that similar cases be handled in a similar fashion," A.R. at 17, the Board explained that ABCMR case 20050002726 is both factually and legally distinguishable from Plaintiff's case.   Regarding the varying facts at issue, the Board noted that "[i]n contrast to the 2005 cited case, the record in this case contains ample evidence that applicant did in fact have a dependent daughter and that he made the rational and informed choice to designate her as an eligible SBP beneficiary."   *Id.* at 20.   Regarding differences in the application of the law, the Board admitted that it had been wrong in previously concluding that applicants were required to prove the eligibility of their beneficiaries at the time the beneficiaries were

selected. *Id.* at 17 (finding that the Board in ABCMR case 20050002726 had "erroneously based the rationale for granting the requested relief on the presumption that there was a governmental obligation to require . . . participants to provide documentary evidence of eligibility . . . when making an election for participation"). It further noted that Plaintiff had been unable to identify any federal law setting forth such a requirement. *Id.*

Had the Board justified its decision in Plaintiff's case purely on a new legal interpretation of the appropriate time at which an applicant must establish a beneficiary's eligibility, the court might consider such a retroactive action to be arbitrary and capricious. Because, however, the ABCMR distinguished the two decisions based not only on its new understanding of the law, but also on significant differences in the factual records, the court finds that the Board's decision not to apply ABCMR case 20050002726 was a rational one. The court understands Plaintiff's frustration that the Board has used his case to acknowledge error in an earlier one. The Board, however, has not acted arbitrarily and capriciously in so doing.

Finally, the court turns to ABCMR case AR2003087551. Because Plaintiff first referenced the case in his Opposition, *see* Pl.'s Opp'n at 19, there is no mention of the case in any of the ABCMR's decisions—nor should there be. The Board cannot be expected to have addressed the case when the argument was not even before it. Therefore, the absence of any discussion about the case in the Board's decisions was not arbitrary and capricious.

ABCMR case AR2003087551 involved a dependent who requested that the ABCMR alter her father's Form 1883 to reflect that she had a physical disability before her eighteenth birthday, and thus, was entitled to benefits. Pl.'s Opp'n, Ex., at 1. The Board concluded that, even though the dependent's name was listed on the form as an eligible beneficiary, it "[wa]s insufficient evidence to show [that the dependent] met the statutory definition of a 'dependent child.'" *Id.* at

3.  Without any other evidence to support her claim, the Board found that the child had not actually been an eligible dependent and therefore refused to alter the record.  *Id.* at 4.  Plaintiff argues that this precedent "clearly demonstrates [the Board's] intent that the mere election [of a beneficiary] alone does not obligate the [government] to provide benefits to the elected person.  The ABCMR expects that to receive benefits the elected person must meet the qualifications spelled out in the appropriate law."  Pl.'s Opp'n at 17.  In other words, Plaintiff argues that ABCMR case AR2003087551 demonstrates that the Board should not recognize Plaintiff's daughter as his beneficiary merely because he listed her as such.

Although the Board had no obligation to address ABCMR case AR2003087551, Defendant did address the case in its Reply brief.  *See* Def.'s Reply, ECF No. 17, at 4.  As Defendant argues, ABCMR case AR2003087551 does not aid Plaintiff because, ultimately, the case stands for the proposition that an applicant seeking records correction bears the burden of showing that the record warrants correction.  Just as in AR2003087551, Plaintiff here did not meet this burden of proof and therefore the Board denied his application for correction.  The Board's application of ABCMR case AR2003087551 would not change that outcome.

\* \* \*

For the reasons stated above, the court finds that the ABCMR appropriately applied relevant law to reach a rational decision that was neither arbitrary, nor capricious, nor contrary to law.  Accordingly, Defendant's Motion for Summary Judgment is granted.

### B.      Plaintiff's Challenge to the Army's Procedural Regulation

In addition to challenging the ABCMR's decision as arbitrary and capricious, Plaintiff contends that Army regulation AR15-185 violates his Fifth and Fourteenth Amendment rights.  *See* Pl.'s Opp'n at 3-4.  AR15-185 governs the method by which the Board handles requests for

reconsideration.   It states, in relevant part, that "[i]f the ABCMR receives a request for reconsideration . . . after the ABCMR has already considered one request for reconsideration, then the case will be returned without action and the applicant will be advised the next remedy is appeal to a court of appropriate jurisdiction."   Am. Compl., Ex. 11.   Plaintiff requests, among other remedies, that the court declare the regulation invalid and order the Secretary of the Army to modify the regulation to mirror similar Air Force and Navy regulations.   Am. Compl. ¶¶ 35-36.   Defendant, for its part, contends that these allegations should be dismissed for lack of standing.   *See* Def.'s Mot. at 10-12.   The court agrees.   Plaintiff has no standing to bring these claims.

"[T]he irreducible constitutional minimum of standing contains three elements."   *Lujan*, 504 U.S. at 560.   A plaintiff must show that: (1) he has suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there is a causal connection between the injury and the complained-of action; and (3) the injury is likely to be redressed by a favorable decision.   *Id.* at 560-61.   Here, Plaintiff has alleged no causal connection between his claimed injury-in-fact—the rejection of his application for correction—and the challenged Army regulation.   Although Plaintiff contested the Board's initial decision—which it affirmed after reconsideration—he never requested a second round of reconsideration.   Plaintiff admits as much.   Pl.'s Opp'n at 2-3 ("The record does show that the [initial] request for reconsideration was adjudicated, but because it is in the Plaintiff[']s belief that the outcome was wrong and in violation of the statutes, a further request for reconsideration of the violation of the law could not be submitted.").   Plaintiff argues that "[t]he regulation barred [him] from making any further request."   *Id.* at 3.   Yet because he did not even try to submit a second request for reconsideration—and thus, he was never actually denied a second reconsideration—Plaintiff cannot establish that he was injured by the Board's application of

AR15-185.  In fact, none of the Board's rulings even mention AR15-185 as the basis for its decision on the merits.

The ABCMR's decisions regarding Plaintiff's request for correction are traceable only to the merits of Plaintiff's application for correction.  Without having alleged a causal connection between his supposed injuries and the Army regulation about which he complains, Plaintiff lacks standing to challenge AR15-185.  Defendant's Motion to Dismiss therefore is granted.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and for Summary Judgment is granted and this action is dismissed in its entirety without prejudice.  A separate order accompanies this Memorandum Opinion.

Dated:  September 29, 2016                        Amit P. Mehta
                                                  United States District Judge